TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
J. MARK CHILDS (Cal. Bar No. 162684)
Assistant United States Attorney
Chief, Transnational Organized Crime Section
JEREMY K. BEECHER (Cal. Bar No. 301272)
MATT COE-ODESS (Cal. Bar. No. 313082)
Assistant United States Attorneys
Transnational Organized Crime Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: 213-894-2433/5429
    Facsimile: 213-894-0142
    E-mail:   mark.childs@usdoj.gov
               jeremy.beecher@usdoj.gov
               matt.coe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:23-cr-524(A)-DMG-5 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT GUILLERMO ZAMBRANO'S MOTION TO DISMISS INDICTMENT WITH PREJUDICE OR RELEASE DEFENDANT FROM GOVERNMENT CUSTODY |
| v. | |
| GUILLERMO ZAMBRANO, | |
| Defendant. | Hearing Date: January 28, 2025<br>Hearing Time: 11:00 a.m.<br>Location:   Courtroom of the Hon. Dolly M. Gee |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney J. Mark Childs, Jeremy K. Beecher, and Matt Coe-Odess, hereby files its Opposition to Defendant Guillermo Zambrano's Motion to Dismiss Indictment with Prejudice or Release from Government Custody.

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 7, 2026                Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

_____/s/_____
J. MARK CHILDS
JEREMY K. BEECHER
MATT COE-ODESS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Guillermo Zambrano's motion to dismiss the indictment because he is currently detained pending immigration removal proceedings should be denied.  The law permits the government to simultaneously initiate removal proceedings and criminal proceedings, and defendant has not identified any purported prejudice to him as to this criminal proceeding.

The Court should also deny defendant's alternative request for expedited release from immigration custody because the United States Immigration and Customs Enforcement ("ICE") has both mandatory and discretionary authority under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, et seq., to detain defendant pending his removal proceedings.  More specifically, ICE has discretionary authority under 8 U.S.C. § 1226(a)(1) to detain noncitizens pending removal.  The existence of ongoing criminal proceedings is not a basis to require ICE to release an individual from immigration custody.

**II.   STATEMENT OF FACTS**

Defendant is a Venezuelan national who is charged in this case with:  conspiracy to aid and abet the distribution of cocaine and methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2(a); conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h); conspiracy to operate an unlicensed money transmitting business in violation of 18 U.S.C. § 371; and structuring transactions to avoid a reporting requirement in violation of 31 U.S.C. §§ 5313, 5324(a)(3), (d)(2).  (First Superseding Information, Dkt. No. 217.)  During the

investigation leading to the instant case, defendant was observed ferrying bulk quantities of cash drug trafficking proceeds between co-conspirators -- in one instance changing the license plates on his car while doing so, apparently to evade law enforcement detection – as well as structuring cash deposits of drug trafficking proceeds at a Citibank ATM in Long Beach for the purpose of avoiding a reporting requirement.  (Id. ¶¶ 4-5, 7, 12.)

Defendant first appeared in this Court on November 2, 2023, and was released on bond following a November 7, 2023, detention hearing.

On June 24, 2025, during active discussions between the prosecution team and defense counsel regarding the resolution of defendant's case, defense counsel informed the prosecution team that defendant had been taken into custody by United States Immigration and Customs Enforcement ("ICE") earlier that day, which the prosecution team subsequently confirmed.[1]

According to ICE's inmate locator website, defendant is presently detained at the Adelanto Detention Facility in Adelanto, California.  According to the Executive Office of Immigration Review's case information website, defendant is in active immigration court proceedings, with his individual hearing set for February 23, 2026, at the Adelanto Immigration Court.

Defendant's trial in this Court is currently set for June 2, 2026.  (Dkt. No. 542.)

**III. LEGAL STANDARD**

Congress enacted the Bail Reform Act ("BRA"), 18 U.S.C. § 1342, to "give the courts adequate authority to make release decisions that

---

[1] The assigned prosecution team had not been notified that ICE was looking for, or intended to detain, defendant.

2

give appropriate recognition to the danger a person may pose to others if released...." United States v. Salerno, 481 U.S. 739, 741 (1987). After a hearing, if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

The INA, 8 U.S.C. § 1101, et seq., charges the United States Secretary of Homeland Security with the administration and enforcement of the INA and other immigration laws. Under the INA, ICE is authorized or, in certain cases, required, to detain individuals who are subject to removal. See 8 U.S.C. §§ 1226(a)(1) (authorizing discretionary detention pending removal); 1226(c) (requiring mandatory detention based on prior criminal convictions); 1231(a)(2) (requiring mandatory detention based on final order of removal).

**IV. ARGUMENT**

   **A.   ICE Has Discretionary Authority to Detain Defendant**

The Bail Reform Act ("BRA") governs detention in criminal cases. See 18 U.S.C. §§ 3142 & 3143. The Immigration and Nationality Act ("INA"), governs detention of noncitizens in civil removal proceedings. See 8 U.S.C. §§ 1226, 1231. They are "different statutory and regulatory regime[s]." United States v. Diaz-Hernandez, 943 F.3d 1196, 1199 (9th Cir. 2019). "Detention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities." United States v. Vasquez-Benitez, 919 F.3d 546, 552 (D.C. Cir. 2019).

Accordingly, "ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination." United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir. 2018). "No court of appeals . . . has concluded that pretrial release precludes pre-removal detention," United States v. Soriano Nunez, 928 F.3d 240, 245 (3d Cir. 2019) (following Veloz-Alonso and Vasquez-Benitez), because nothing in the BRA prevents DHS/ICE "from exercising its independent statutory authority to detain an arriving noncitizen pending removal," United States v. Ventura, 747 F. App'x 20, 22 (2d Cir. 2018).

Defendant's arguments premised on United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167 (D. Or. 2012), fail because Trujillo-Alvarez is not binding precedent, ignores the independent detention authority prescribed by the INA, and is contrary to several circuit court decisions.[2] See United States v. Lett, 944 F.3d 467, 471 (2d Cir. 2019) ("[T]he BRA and the INA authorize the government to pursue both criminal prosecution and removal simultaneously, and there is no conflict between the detention-and-release provisions of the two statutes."); United States v. Soriano Nunez, 928 F.3d 240, 245 (3d Cir. 2019) (pre-trial release does not preclude pre-removal detention, and the BRA and INA do not conflict); United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir. 2018) ("ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination."); see also United States v. Pacheco-Poo, 952 F.3d 950, 953 (8th Cir. 2020);

---

[2] It does not appear the Ninth Circuit Court of Appeals has ruled on this issue.

4

Case 2:23-cr-00524-DMG    Document 616    Filed 01/07/26    Page 7 of 11    Page ID #:2948

United States v. Urbina-Escoto, 2020 WL 6147024 (W.D. Wash. Oct. 20, 2020).

In United States v. Lett, the defendant was a citizen of Trinidad and Tobago and was arrested at John F. Kennedy International Airport after Customs and Border Protection ("CBP") found 2.12 kilograms of cocaine in his suitcase. 944 F.3d at 469. "CBP paroled Lett into the United States for criminal prosecution and transferred him to the custody of the Bureau of Prisons ("BOP"), and the government filed a criminal complaint charging Lett with importing cocaine . . . ." Id. Meanwhile, ICE lodged an immigration detainer against him. Id. Ultimately, the district court ordered Lett's release pending his criminal case. See id. Accordingly, ICE acted on the lodged detainer and took Lett into ICE custody following his release from BOP, and initiated removal proceedings. See id. "Lett filed a motion to dismiss the indictment in his criminal case, arguing that his continued detention by ICE violated the BRA." Id. The district court dismissed the Indictment holding that the government needed to decide whether to criminally prosecute or remove Lett but could not proceed simultaneously. See id. at 469-470. The Second Circuit vacated this decision finding that the BRA and the INA "serve different purposes, govern separate adjudicatory proceedings, and provide independent statutory bases for detention," and therefore "the government's authority to detain an alien pursuant to the INA" does not disappear merely because he cannot be detained under the BRA pending his criminal trial. See id. at 470.

Similarly, here, ICE took defendant into ICE custody pursuant to its detention authority under the INA. More specifically, ICE has discretionary authority to detain defendant pending his removal

proceedings.  The government is not required to choose what proceedings to pursue and may pursue both removal and criminal proceedings simultaneously.

In addition, the facts in Trujillo-Alvaraz are plainly distinguishable.  In Trujillo-Alvarez, the District Court repeatedly highlighted the apparent coordination between the United States Attorney's Office and ICE and appeared concerned that such coordination effectively resulted in the executive branch circumventing the BRA by ensuring that the defendant, Alvarez-Trujillo, was detained pending trial.  For example, in Trujillo-Alvarez, the District Court highlighted the following: (1) on the same day that ICE arrested Alvarez-Trujillo and placed him in ICE custody, an ICE deportation officer presented the case against Alvarez-Trujillo to the United States Attorney's Office for prosecution for illegal reentry in violation of 8 U.S.C. § 1326(a); (2) one day before the United States Attorney's Office obtained an indictment against Alvarez-Trujillo, the same ICE deportation officer caused an Immigration Detainer—Notice of Action (an "ICE detainer") to be lodged against Alvarez-Trujillo; (3) after the United States Attorney's Office filed the indictment one day later, ICE transferred Alvarez-Trujillo to the U.S. Marshals Service to appear for his arraignment; (4) the same ICE deportation officer who caused the ICE detainer to be lodged also served as the prosecution's case agent and sat at counsel's table next to the Assistant United States Attorney during the detention hearing, and (5) after the magistrate judge released Alvarez-Trujillo under the BRA, ICE agents took Alvarez-Trujillo back into ICE custody and transported him out of the

District of Oregon to an ICE detention center in Tacoma, Washington. Trujillo-Alvarez, 900 F. Supp 2d 1167, 1171-72.

By contrast, in this case, there is no overlap or coordination between the criminal proceedings and removal proceedings against defendant. For example, unlike the facts in Trujillo-Alvarez, (1) defendant's alleged crimes have nothing to do with his immigration status, (2) no ICE agent or deportation officer had or has any role in defendant's criminal proceedings, (3) the Department of Homeland Security took defendant into custody for removal proceedings on or around June 24, 2025 -- more than a year and a half after defendant's detention hearing in the criminal proceedings, (4) defendant was not transported out-of-state or to another district, and (5) there was no coordination between the prosecution team and ICE.

For the avoidance of doubt, the government may pursue both removal and criminal proceedings simultaneously even if there was some level of coordination between the United States Attorney's Office and ICE. But Trujillo-Alvarez is particularly inapplicable to this case where the criminal proceedings and the removal proceedings are completely separate without any overlapping facts or allegations.

**B.  Dismissal Is Inappropriate without a Showing of Injury and Prejudice**

The Ninth Circuit has held that "[i]f the government, by placing [the defendant] in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy." See United States v. Santos-Flores, 794 F.3d 1088, 1091 (9th Cir. 2015). But defendant has not attempted to articulate how his immigration detention has jeopardized his criminal proceedings. Although defendant summarily claims he

7

"cannot effectively prepare for trial while in immigration detention," defendant does not explain how.  Motion at 4.  Nor does he allege that his immigration detention has prevented him from adequate access to counsel.  In short, defendant does not claim that being at the Adelanto ICE Processing Center has jeopardized his criminal proceedings, and the fact that Adelanto ICE Processing Center is a farther driving distance than the Metropolitan Detention Center is not a sufficient basis to dismiss the indictment.  <u>See</u> <u>United States v. Lewis</u>, 873 F.2d 1279, 1280 (9th Cir. 1989) (finding that defendant was not denied access to counsel because the 120-mile distance between him and his counsel did not actually or constructively deny him the assistance of counsel altogether)[3]; <u>Ekene v. Cash</u>, 2012 WL 4711723, at *12 (C.D. Cal. May 14, 2012)(citing <u>United States v. Lewis</u>); <u>Pino v. Dalsheim</u>, 558 F. Supp. 673, 675 (S.D.N.Y. March 8, 1983)(noting that several courts have noted that "travel inconvenience of an attorney. . . . does not reach the level of a constitutional violation").

In this case, defendant actively worked to launder, transport, and conceal drug trafficking proceeds belonging to the Sinaloa Cartel, whose activities have caused untold devastation in the United States, Mexico, and elsewhere.  In doing so, defendant intentionally facilitated the financial lifeline that makes the Sinaloa Cartel's nefarious activities possible.  Dismissing the Indictment is not

---

[3] According to Google Maps, the Adelanto ICE Processing Center is approximately 85 miles from the United States Courthouse located at 350 West 1st Street in Los Angeles.

8

appropriate here in light of the nature of defendant's wrongdoing and would not advance the ends of justice.[4]

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's request to dismiss the indictment and his alternative request for release from ICE custody.

---

[4] The government is aware of at least one recent case where a District Court dismissed an indictment after a criminal defendant was taken into immigration custody, United States v. Parias, No. 25-cr-904-FMO (C.D. Cal. Dec. 27, 2025), Dkt. 76.  While the government disagrees with the Parias court's holding and reasoning, this case is nevertheless readily distinguishable from Parias, where the District Court found specific prejudice to defendant in the circumstances of that case and the lead-up to trial, based on a voluminous factual record that was before it.  Id. at 12-13.  Such prejudice is lacking here, especially as there is no factual record before the Court showing any inability for defendant to have access to counsel before a trial.